## AS TO LIABILITY OF PLEDGEE FOR SELLING ARTICLE FOR LESS THAN ITS VALUE.

Circuit Court of Cuyahoga County.

THE MERCHANTS' BANKING & STORAGE COMPANY v.
SARAH M. RYDER.

Decided, December 22, 1900.

*Pledges—Duty of Pledgee to Obtain Highest Price of Pledged Articles at Private Sale.*

1. Where the pledgee of personal property sells the pledged articles at private sale, he acts as agent of the pledgor in making the sale, and it is his duty to exhibit the articles in such a manner as to attract buyers and use all other reasonable methods of obtaining as nearly as possible what the articles are reasonably worth.

2. Where the pledgee of personal property sells it at private sale for a sum much less than the actual value of the property, the discrepancy in price may be so great as to establish want of care and neglect of duty on his part and make him liable in damages for the difference between the selling price and the actual value.

*M. H. Solloway,* for plaintiff in error.
*Foster & Foster,* contra.

CALDWELL, J.; MARVIN, J., and HALE, J., concur.

The case of the Merchants' Banking & Storage Company against Sarah M. Ryder comes into this court on error from the court of common pleas.

The defendant in error, Sarah M. Ryder, pawned some diamond ear-rings with the plaintiff in error, the Merchants' Banking & Storage Company, and obtained upon them $147, for which she gave a note of $150.

A card was given her at the time, which she accepted and retained, and on which she waived notice of the sale and waived publication of sale, and authorized a private sale. The obligation became due and was not paid; the interest was not kept up; and, after the statutory period, a private sale was made. The

diamonds were sold for $195, and the pledgor brought this action to obtain the full value of the diamonds, less what she owed the bank.

Many exceptions were taken to the evidence upon the trial of the case, and exceptions were taken because the court refused to charge as requested by the storage company. These exceptions to the evidence, and the exceptions to the court's refusal to charge, were largely due to the fact that the case was tried on a different theory from that presented by the petition; that is, the attorney for the storage company took it that this was for a conversion of the property and as though Mrs. Ryder was trying to reclaim the property; but that was not the action.

It was recognized as a fact all the way through, that the storage company had proceeded as it was authorized to do, in proceeding without notice to her to sell, and proceeding to sell at private sale.

The only question involved in the case was, whether the storage company, because of the manner of conducting the sale, was so negligent and careless in the sale of this property, that it obtained much less than its real value, and that the evidence of that discrepancy would, in and of itself, show carelessness and negligence.

The title to pledged property remains in the pledgor; the pledgee gets a lien upon the property. When the pledgee makes a conversion of the property, if that is unlawful the pledgor may treat it as no disposition of the property and may proceed against the pledgee. That is one remedy that the pledgor may have; or the pledgor may proceed simply for damages for non-performance of the duty owed to the pledgor by the pledgee.

Complaint is made in this case that the pledgee of the property made no reasonable effort to obtain purchasers for this property when it was for sale; that it was kept in a desk, in a box, and was exhibited to no one who was there for the purpose of making purchases except those who might inquire for property of that kind.

The authorities show clearly that the pledgee can not excuse himself in making a sale of this character unless he uses that diligence that persons who generally sell that class of property use. If it becomes necessary to advertise to call the attention of

persons who purchase that class of property, notifying them that the property is for sale—all these things are what merchants do; and merchants always expose that class of property in show-cases; they do not hide it away as a rule; at least, they keep some part of it where it can be seen, and where persons looking for purchases of that sort, may see it.    None of these things were done on the part of the company.

Now, in the sale of pledged property, the pledgor still remains the owner, and the pledgee becomes an agent to sell, and the authorities state his duty pretty clearly in saying that his duty is that of a prudent executor in making a disposition of the property in his hands as trustee.    The duty of the agent is measured by many authorities by that rule, and, if he falls short of that, he has not met his obligation to the bailor.

The evidence in this case shows that this property was sold for $190; and while experts as to the value of diamonds, some called by one side and some by the other, testified in this case, there was no expert called who did not place the value of this property at considerably more than was obtained for it; even the very lowest by either side places it considerably higher.

The only question in the case is, whether it was sold so much below the market value of the property that it would warrant the court in saying that there was negligence on the part of the agent or pledgee.    That is really the only question there is in the case.    Some authorities have said that that discrepancy must be so great as to show an intentional injury.    That was, many years ago, the rule of some of the courts.    I do not find that it is the rule of the present day at all.    But, as I have said, it is put on the ground of agency; and, if the testimony shows that the agent was careless and negligent in obtaining what he might have had for the property, that is, what the market would have warranted for such property, then he is liable for such careless-ness and negligence.

We have figured this matter over, taking the figures of the experts, and have examined it carefully, and we can not say that the jury were far out of the way; the evidence would war-rant them in giving the verdict they did, and we see no other way, under the rule in such matters, than to affirm this judg-ment.